**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

**PITTSBURGH**

| | | |
|---|---|---|
| JAMIA AVERYTT, | ) | |
| | ) | |
| Plaintiff, | ) | 2:24-CV-00742-MJH |
| | ) | |
| vs. | ) | |
| | ) | |
| MAGEE-WOMENS HOSPITAL OF UPMC, | ) | |
| | ) | |
| Defendant, | | |

**OPINION**

Plaintiff, Jamia Averytt, *pro se*, brings the within action against Defendant, Magee-Women's Hospital of UPMC, for sex discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964. (ECF No. 5). Magee now moves for summary judgment pursuant to Fed. R. Civ. P. 56. (ECF No. 30). The matter is now ripe for decision

Upon consideration of the relevant pleadings, Magee's Motion for Summary Judgment (ECF No. 30), the respective briefs (ECF Nos. 34, 36, and 38), Concise Statements of Material Fact and Appendix (ECF No. 32, 37, and 39), and for the following reasons, Magee's Motion for Summary Judgment will be granted.

I.    Background

Ms. Averytt began working at UPMC Magee in 2019 as a housekeeper, in the Environmental Services ("EVS") Department. (ECF No. 32at ¶1). A few years before her termination, she was promoted to a "Team Lead" position which required her to oversee a group of housekeepers on the night shift. *Id*. at ¶4.

Euguene Brundage and Justin Mills were Ms. Averytt's supervisors. *Id*. at ¶5. Ms. Averytt testified as follows, about her relationship with Mr. Brundage:

Q. Okay. How did you get along with Eugene?

A. We were fine. We worked together those five years. He pretty much trained me and taught me a lot of the job.

Q. He was involved in promoting you? A. Yes. He recommended it.

(ECF No. 32-2 at pp. 37-38). Ms. Averytt testified that she was evaluated fairly. *Id*. She also testified that she got along with Mr. Brundage's boss, Justin Mills, for the most part, although she seldom interacted with him. *Id*. at p. 36.

On December 30, 2022, Ms. Averytt was allegedly involved in a verbal altercation with Operations Manager, Justin Mills, resulting in a final written warning for "unprofessional, profane, and disrespectful" interactions toward Justin Mills. (ECF No. 32 at ¶12). Six months later, on June 20, 2023, while working the night shift, Ms. Averytt allegedly engaged in misconduct, which resulted in her discharge. That misconduct is described in her termination letter as follows:

> On your scheduled shift, Tuesday night, 6/20/2023, into Wednesday morning, 6/21/2023, it was reported that you were missing from the department. Upon review of your badge swipes and camera footage, it showed that you entered your car at 11:23 pm and did not leave your car to return to the building until 3:41 am, all while remaining clocked in. Being outside the hospital, away from your department not working during your shift is considered theft of UPMC time. On 6/28/2023, you provided a statement denying this occurred which is dishonesty.

*Id*. at ¶ 22. Ms. Averytt was discharged on June 29, 2023 because of this incident, in addition to her final written warning issued for the December 30, 2022 incident mentioned above, as well as for lying about the incident when confronted with it. *Id*. at ¶23.

Ms. Averytt's absence from her shift was captured on video, and was confirmed by her badge swipes, as leaving the building at 11:21 p.m. on June 20 and swiping back in at 3:31 a.m. on June 21. The tele-tracking report shows Ms. Averytt's last activity on the shift was at 11:12. *Id.* at ¶¶ 14-17. When Ms. Averytt was given the opportunity to explain her absence, she told Mr. Brundage that "this is simply not true." *Id.* at ¶ 18. Ms. Averytt offered inconsistent statements about the incident resulting in her discharge, and at one point she admitted she was sleeping, because of medication; and at another point, she denied that it occurred, while at another point she stated that she did not remember. *Id.* at ¶¶ 18-21.

Ms. Averytt testified that she was not aware of any similarly situated male employee who, to the knowledge of her managers, left work without clocking out, was paid for the time and not disciplined. *Id* at ¶¶ 32-33. 32. The only person about whom Ms. Averytt was aware of who left the building without clocking out, who was paid for that time, and who was reported to management, was a temporary employee, named Gil. The employee was leased from a staffing company, and was not a UPMC Magee employee reporting to Justin Mills. *Id.* at ¶ 32. Ms. Averytt did not know whether Gil was disciplined. *Id.* at ¶ 33.

After her termination, on June 30, 2023, Ms. Averytt sent an email to the human resources service account, alleging that she was treated "unfairly because I am a female," and otherwise raising claims of sex discrimination. *Id.* Ms. Averytt acknowledges that her post-termination email is the only written communication that mentions discrimination based on sex. *Id.* at ¶ 27.

> Following her termination, Ms. Averytt filed a grievance, wherein she stated: [T]he only explanation I have for this inappropriate conduct was that the medication that I take for my severe depression had caused me to have an adverse effect and I don't recall what time I went on break or if I possibly fell asleep during my break.

*Id*. at ¶ 28.

II.    Relevant Standard

Summary judgment may only be granted where the moving party shows that there is no genuine dispute about any material fact, and that judgment as a matter of law is warranted. Fed. R. Civ. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations, or determine the truth of the matter; rather, its function is to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (citing decisions); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998). The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment. *Liberty Lobby*, 477 U.S. at 248.

III.    Discussion

A.  Sex Discrimination

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating

against any employee based on the employee's sex. 42 U.S.C. §§ 2000e-2(a)(1). A claim of intentional employment discrimination, disparate treatment, may be proven by either "direct" evidence of discriminatory intent or "indirect" evidence from which one can infer an intent to discriminate. *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 364 (3d Cir. 2008).

To establish a prima facie case of sex discrimination, a plaintiff must show that "1) [she] is a member of a protected class, (2) [she] was qualified for the position [she] sought to attain or retain, (3) [she] suffered an adverse employment action, and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003); *Veverka v. Human Services Center*, 2023 WL 2500370 at *10 (W.D. Pa. March 14, 2010).

If a plaintiff satisfies the elements of a prima facie case for sex discrimination, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for why the plaintiff was discharged. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The burden upon the defendant at the second step of the *McDonnell Douglas* framework is "relatively light," and the employer need only introduce "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes v. Perskie*, 32 F.3d 759, 706 (3d Cir. 1994).

To avoid summary judgment, therefore, a plaintiff must offer evidence which, if true, is sufficient to show that an employer's explanation for her discharge was a pretext to mask an unlawful motive. Pretext may be shown by offering facts that would allow the court to (1) disbelieve the employer's articulated legitimate reason for taking the adverse employment action; or (2) believe that an invidious discriminatory reason was more likely than not the real reason for the action. *Willis v. Children's Hospital of Pittsburgh*, 808 F.3d 638, 646-49 (3d Cir.

2015); *Brandon v. UPMC Presbyterian Shadyside*, 2023 WL 309341 at *4 (W.D. Pa. April 26, 2023), To establish pretext under the first prong of the foregoing standard, a plaintiff must show that the defendant's reason for her discharge is "so weak as to render it "unworthy of credence." *Willis, supra*, at 648, quoting *Fuentes v. Perskie*, 32 F. 3d 757, 765 (3d Cir. 1994). Put a different way, "the plaintiff must point to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons [such] that a reasonable factfinder could rationally find them 'unworthy of credence'" and hence infer that the proffered nondiscriminatory reason "did not actually motivate" the employer's action. *Fuentes, supra*, at 765; *Schreiver v. Moon Area School District*, 2019 WL 3307249 (W.D. Pa. 2019).

1. Prima Facie Case

Magee argues that, while Ms. Averytt alleges that her supervisors "never took disciplinary actions against male employees for policy violations. Yet they would constantly write up and terminate female employees," she has not substantiated this allegation with admissible evidence.  Magee further asserts that disciplinary records do not support a pattern of favoring one gender over another.  Ms. Averytt contends that a male employee named Gil was treated differently than her.

Ms. Averytt plausibly satisfies the first three elements of a prima facie sex discrimination claim, but the fourth, and final, element is at issue.  "The means by which a claimant most often satisfies the [final] element is by showing that she was treated less favorably than similarly situated employees who are not in the same protected class." *Neidigh v. Select Specialty Hospital–McKeesport*, 150 F.Supp.3d 573, 577 (W.D. Pa. 2015), aff'd, 664 Fed.Appx. 217 (3d Cir. 2016); *Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 357 (3d Cir. 1999).

Here, as to the final element, Ms. Averytt cannot support a prima facie claim for sex

discrimination. The only specific complaints of favoritism, that are disclosed in the record, involve favoritism towards a female employee. Although Plaintiff alleges that male employees were never disciplined, Defendant has produced a business record which refutes that allegation. Ms. Averytt suggests a person named Gil as a comparator. Gild had allegedly engaged in similar behavior, but he was not discharged. However, the evidence of record, unrefuted by Ms. Averytt, demonstrates that Gil was not similarly situated. The record demonstrates that Gil was a temporary employee of a staffing company, and he did not report to Ms. Averytt's supervisors. (ECF No. 31-2 at pp. 83-87). Further, Ms. Averytt produced no evidence of record to demonstrate whether Gil was disciplined or not. Without such evidence for a factfinder to find an inference of discrimination on that basis, Ms. Averytt cannot satisfy the final element of her prima facie case.

Accordingly, on this basis alone, Magee would be entitled to summary judgment on Ms. Averytt's sex discrimination claim. Further, even if Ms. Averytt could have satisfied a prima facie case, her claim cannot satisfy the remainder of the *McDonnell Douglas* framework.

2.  Legitimate Non-Discriminatory Reason

Assuming Ms. Averytt could could have met her burden of proof on her prima facie sex discrimination claim, Magee must offer a legitimate, non-discriminatory reason for her termination. As referenced above, the defendant's burden on the second step of the *McDonnell Douglas* framework is light.

Here, Magee produced a declaration from Ms. Averytt's supervisor, Eugene Brundage, plus a written discharge letter, which details why Ms. Averytt was discharged. Specifically, her discharge was based upon evidence of time theft, for when she left her shift for four hours without signing out or reporting the absence and then lying about the incident. Through such

evidence, Magee sufficiently meets its burden that Ms. Averytt's discharge was for a reason other than sex

3.  Pretext Analysis

As Magee has met its burden under the second stage of the *McDonnell Douglas* framework, the burden shifts to Ms. Averytt to offer evidence that the Magee's non-discriminatory reasons were offered as mere pretext. Under the first prong of the pretext analysis, there is no evidence to disbelieve Magee's articulated legitimate reason to discharge Ms. Averytt.  Evidence of Ms. Averytt's culpability, which led to her discharge, is indisputable.  Such evidence includes a video of Ms. Averytt exiting the building, approaching her car, and returning to work four hours later.   Ms. Averytt also does not dispute that production of her card swipes showing her going out of and into the building, plus the evidence showing no work activity during this time period, all support Magee's reason for her termination. Moreover, when confronted with such evidence, Ms. Averytt denied she was out of the building. And later, when submitting a grievance, Ms. Averytt admitted her absence and blamed the adverse effects of medications caused her to fall asleep.  Ms. Averytt has otherwise produced no evidence to justify any finding that Magee's explanation for her discharge was implausible or unworthy of belief.

Under the second prong of the pretext test, Ms. Averytt  does not identify evidence in the record that "would allow a factfinder to believe unlawful discrimination was more likely than not a motivating or determinative cause of her termination." *Willis, supra*, at 649.  As in the prima facie analysis, Ms. Averytt adduces no evidence connecting her discharge with any discriminatory motive or cause. Therefore, Ms. Averytt has not met her burden of establishing any fact issue as to second pretext prong.

Accordingly, Magee's Motion for Summary Judgment, as regards to Ms. Averytt's Title VII sex discrimination claims, asserting that her termination was on account of her gender, will be granted. Judgment will be entered in favor of Magee on said claim.

### B.  Retaliation

Magee maintains that Ms. Averytt cannot support her retaliation claim, because she did not engage in any protected activity.  Ms. Averytt contends that she made written complaints of sex discrimination and disparate treatment.  Title VII prohibits retaliation, by making it unlawful for employers to discriminate against "any individual ... because he has opposed any ... unlawful employment practice" or because that individual has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e–3(a).

To establish "a prima facie case of retaliation, a plaintiff must show that: (1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." *Brown-Baumbach v. B&B Automotive, Inc.*, 437 F. App'x 129, 134–35 (3d Cir. 2011) (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir.2000) (emphasis added). As with her disparate treatment claim, without direct evidence, Ms. Averytt must establish her claim through indirect or circumstantial evidence under the *McDonnell Douglas* framework. *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015).

A causal connection cannot be established if the employment decision is made before the alleged protected activity. *Clark County School District, supra*, at 272 (protected activity took place on the day after supervisor expressed intent to transfer); *Yan Yan v. Penn State Univ.*, 529 F. App'x 167, 172 (3d Cir. 2013) (decision to reschedule exam made two days prior to receiving

a letter that complained of discrimination).

Here, Ms. Averytt made complaints during her employment, but there is no evidence that she opposed sex discrimination or any other practice made unlawful by Title VII. The complaint documentation from Ms. Averytt contains no evidence referencing sex discrimination. Further, in discovery, Ms. Averytt admitted that a post-termination email "is the only written communication [to UPMC] that mentions discrimination based on sex." (ECF No. 32-4 at p. 3). She has also not identified any pre-termination written complaints of sex discrimination. While one email complained about favoritism shown to a co-worker, Ms. Averytt testified that the co-worker referred to in the e-mail was female. As regards any verbal complaints about sex discrimination, Ms. Averytt testified that any verbal complaints made to her supervisors, Brundage and Mills, were not about sex discrimination. (ECF 32-2 at pp. 38 to 53). Without such evidence of any pre-termination protected activity, Ms. Averytt cannot support a prima facie case of retaliation.

Accordingly, Magee's Motion for Summary Judgment, as regards to Ms. Averytt's Title VII retaliation claims, will be granted. Judgment will be entered in favor of Magee on said claim.

IV.    Conclusion

Based upon the foregoing, Magee's Motion for Summary Judgment will be granted. Judgment will be entered in favor of Magee and against Ms. Averytt. As separate order will follow.

Dated:  September 22, 2025

Marilyn J. Horan
United States District Judge